ANCHOR SAVINGS & LOAN ASSOCIATION,
Petitioner-Appellant-Petitioner,

v.

EQUAL OPPORTUNITIES COMMISSION, CITY OF MADISON,
and Roy U. Schenk, Respondents.

Supreme Court

*No. 82–1508.  Argued September 4, 1984.—Decided October 2, 1984.*

(Also reported in 355 N.W.2d 234.)

For the petitioner-appellant-petitioner there were briefs by *Ronald W. Todd* and *Stroud, Stroud, Willink, Thompson & Howard,* Madison, and oral argument by *Mr. Todd.*

For the respondent, City of Madison, the cause was argued by *James L. Martin,* assistant city attorney, with whom on the brief was *Henry A. Gempeler,* city attorney.

There was a brief and oral argument by respondent *Roy U. Schenk, pro se.*

Amicus curiae brief was filed by *W. Charles Jackson, James E. Bauman* and *Michael, Best & Friedrich,* Milwaukee, for the Wisconsin League of Financial Institutions, Ltd.

STEINMETZ, J. The issue in this case is whether the city of Madison, through an exercise of its home rule powers, can regulate a state chartered savings and loan association.

The Equal Opportunities Commission (EOC) of the city of Madison found that Anchor Savings & Loan Association (Anchor) discriminated against Roy U. Schenk on the basis of his marital status, in violation of sec. 3.23 (3) of the Madison General Ordinances,[1] when it denied

---

[1] The Madison ordinance sec. 3.23 (3) reads:

"(3) *Credit.* It shall be an unfair discrimination practice and unlawful and hereby prohibited for any creditor to discriminate against any person in any credit transaction because of sex, race, religion, color, national origin or ancestry, age, handicap, marital status, source of income, arrest record or conviction record, less than honorable discharge, physical appearance, sexual orientation, political beliefs, or the fact that such person is a student as defined herein."

■

Schenk a mortgage loan. Anchor argues that Madison did not have the power to regulate the lending practices of a state chartered savings and loan, and in the alternative, that Anchor did not unlawfully discriminate against Schenk.

The circuit court for Dane county, the Honorable Richard W. Bardwell, affirmed the EOC. Upon Anchor's appeal to the court of appeals, that court found Madison had the power to regulate Anchor's lending practices, and Anchor did discriminate against Schenk as to his marital status and therefore it affirmed the circuit court.[2] Anchor petitioned this court for review. We reverse the decision of the court of appeals.

In December, 1977, Schenk, a divorced, single man, applied for a mortgage loan at Anchor in the amount of $24,000 to purchase income property in Madison. As a result of his divorce, Schenk was under a court ordered obligation to pay his former wife and four children $500 a month in support and maintenance.

In evaluating Schenk's credit-worthiness, Anchor applied its customary formula and considered his fixed debt-to-income ratio, a computation that yields the percentage of an applicant's monthly income committed to repayment of recurring fixed expenses. Schenk's percentage exceeded the maximum percentage acceptable and his application was denied. His support and maintenance payments were considered fixed expenses and were used in calculating his percentage. Anchor did not consider as fixed expenses the family maintenance obligations of married persons seeking loans. For married persons such maintenance obligations were considered in loan applications as flexible expenses. Without the support and maintenance payments, Schenk's fixed debt-to-

---

[2] *Anchor Sav. v. Equal Opportunities Comm.*, 116 Wis. 2d 672, 343 N.W.2d 122 (Ct. App. 1983).

income ratio would not have exceeded the maximum acceptable percentage.[3]

The trial court concluded that the city of Madison could lawfully regulate the lending practices of a state chartered savings and loan. The court of appeals held that the city of Madison could regulate lending practices of a state chartered savings and loan because there was neither a statutory prohibition nor an infringement of the spirit of state law or policy.

Anchor's challenge to Madison's regulatory power raises a question of law that we review independently. *LePoidevin v. Wilson*, 111 Wis. 2d 116, 121, 330 N.W.2d 555 (1983); *First Nat. Leasing Corp. v. Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977); *Nelson v. Union Nat. Bank*, 111 Wis. 2d 313, 315, 330 N.W.2d 225, 226–27 (Ct. App. 1983).

If the city of Madison has power to regulate credit practices of a savings and loan association, its source must be traced through the home rule provisions of the Wisconsin Constitution, Art. XI, sec. 3(1)[4] and sec. 62.-11(5), Stats.[5]

---

[3] Thirty-five percent of fixed expenses to income is considered the maximum ratio for credit purposes. Thirty-six or thirty-seven percent ratio may be permissible depending on other factors, *i.e.*, sizable down payment or large personal net worth.

[4] Art. XI, sec. 3(1), Wisconsin Constitution provides:

"Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature."

[5] Sec. 62.11(5), Stats., provides:

"POWERS. Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the

This court considered the issue of the respective powers of the state and municipalities on the subject of legislative enactment in *State ex rel. Michalek v. LeGrand*, 77 Wis. 2d 520, 527, 253 N.W.2d 505 (1977), and held that three areas have been outlined as: "(1) Those that are 'exclusively of statewide concern'; (2) those that 'may be fairly classified as entirely of local character'; and (3) those which 'it is not possible to fit . . . exclusively into one or the other of these two categories.'" (Footnotes omitted.) Madison EOC and the city concede that the regulation of credit is a matter of statewide concern, as well as local concern.

In *Wis. Asso. of Food Dealers v. City of Madison*, 97 Wis. 2d 426, 432, 293 N.W.2d 540 (1980), we stated:

" 'The constitutional authority of cities only extends to local affairs and does not cover matters of statewide concern.' *Plymouth v. Elsner*, 28 Wis. 2d 102, 106, 135 N.W. 2d 799 (1965). *See also: Muench v. Public Service Commission*, 261 Wis. 492, 53 N.W.2d 514, on rehearing 261 Wis. 515c, 515c–515d, 515j, 55 N.W.2d 40 (1952)."

A city ordinance may be authorized by sec. 62.11(5), Stats., notwithstanding statewide concern in the matter it regulates. The question before this court is whether sec. 62.11(5) provides the city of Madison with the power to enact and enforce the ordinance.

In *Wis. Asso. of Food Dealers v. City of Madison*, 97 Wis. 2d at 432–33, we stated:

"If a city ordinance exercises a power which the legislature could confer on the city, then the city possesses the power under sec. 62.11(5) unless there is express lan-

health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

guage elsewhere in the statutes restricting, revoking, or withdrawing the power, or unless state legislation is logically inconsistent with the existence of the power in the city. *See: Wis. Environmental Decade, Inc. v. DNR,* 85 Wis. 2d 518, 534–35, 271 N.W.2d 69 (1978), quoting with approval, Comment, *Conflicts Between State Statute and Local Ordinance in Wisconsin,* 1975 Wis. L. Rev. 840, 848. This court has added a further limitation on a municipality's exercise of authority pursuant to the legislature's broad grant of power in sec. 62.11 (5) ; ordinances may not ' "infringe the spirit of a state law or . . . general policy of the state." ' *Fox v. Racine,* 225 Wis. 542, 545, 275 N.W. 513 (1937) ; *See also: Wis. Environmental Decade, Inc. v. DNR, supra* at 534–35. Thus in determining whether a preemption challenge to an ordinance adopted pursuant to sec. 62.11 (5) has a reasonable probability of success, a circuit court should assess whether express statutory language has withdrawn, revoked, or restricted the city's power; the probability that the challenged ordinance is logically inconsistent with state legislation ; and the probability that the challenged ordinance infringes the spirit of a state law or general policy of the state."

Section 62.11 (5), Stats., does not limit a municipality's authority to act only in local affairs. As we stated in *Wis. Environmental Decade, Inc. v. DNR,* 85 Wis. 2d 518, 533, 271 N.W.2d 69 (1978) :

"Indeed, sec. 62.11 (5), Stats., would be a nullity if it were construed to confer on municipalities only that authority which related to 'local affairs' since that power is already constitutionally guaranteed by the home-rule amendment."

In *Wis. Environmental Decade,* 85 Wis. 2d at 534, we stated :

"We approve of the rule as set forth by Solheim, *Conflicts Between State Statutes and Local Ordinance in Wisconsin,* 1975 Wis. L. Rev 840, 848:
" '2. If a municipality acts within the legislative grant of power but not within the constitutional initiative,

the state may withdraw the power to act; so if there is logically conflicting legislation, or an express withdrawal of power, the local ordinance falls. Furthermore, if the state legislation does not logically conflict, or does not expressly withdraw power, it is possible that the local ordinance nevertheless must fall if an intent that such an ordinance not be made can be inferred from the fact that it defeats the purpose or goes against the spirit of the state legislation.' "

This same *Wis. Environmental Decade* case cited *Fox v. Racine*, 225 Wis. 542, 545, 275 N.W. 513 (1937), wherein the court stated a municipality may not pass ordinances " 'which infringe the spirit of a state law or are repugnant to the general policy of the state.' " This has been the rule in Wisconsin and still is as most recently stated in *Wis. Asso. of Food Dealers v. City of Madison*, 97 Wis. 2d at 433.

Where a municipality acts within the legislative grant of power but not within the constitutional initiative, the state has the authority to withdraw the power of the municipality to act. The tests for determining whether such a legislatively intended withdrawal of power which would necessarily nullify the local ordinance has occurred are:

(1) whether the legislature has expressly withdrawn the power of municipalities to act;

(2) whether the ordinance logically conflicts with the state legislation;

(3) whether the ordinance defeats the purpose of the state legislation; or

(4) whether the ordinance goes against the spirit of the state legislation. Sec. 62.11 (5), Stats.; *Fox v. Racine*, 225 Wis. 542, 546–47; *State ex rel. Michalek v. LeGrand*, 77 Wis. 2d 520, 530. *See also:* Solheim, *supra*.

The state legislature has adopted a complex and comprehensive statutory structure dealing with all aspects

of credit and lending in ch. 138, Stats., which governs rates of interest, variable rate contracts, federal rate parity, residential mortgages and credit discrimination. See sec. 138.20.[6] In addition, ch. 215 governs state chartered savings and loan associations. This chapter created the office of the commissioner of savings and loan. Sec. 215.03(1) provides that: "All associations organized under this chapter or similar laws, or permitted by license to transact, in this state, a business similar to that authorized by this chapter, shall be under the supervision and control of the commissioner."

There is a detailed system of control over the decisions of savings and loans through investigation and orders under the commissioner's authority set forth in ch. 215, Stats.

The rules of the commissioner of savings and loan, Wis. Admin. Code, secs. S–L 1.01, *et seq.*, supplement the statutory regulation. Chapter S–L 27 is entitled "Fairness in Lending" and sec. S–L 27.01 defines the purpose of the regulation as follows: "It is the purpose of this chapter to require savings and loan associations

---

[6] Sec. 138.20, Stats., provides:

"**Discrimination in granting credit or loans prohibited.** (1) RULE. No financial organization, as defined under s. 71.07(2)(d)1, or any other credit granting commercial institution may discriminate in the granting or extension of any form of loan or credit, or of the privilege or capacity to obtain any form of loan or credit, on the basis of the applicant's physical condition, developmental disability as defined in s. 51.01(5), sex or marital status; provided, however, that no such organization or institution shall be required to grant or extend any form of loan or credit to any person who such organization or institution has evidence demonstrating the applicant's lack of legal capacity to contract therefor or to contract with respect to any mortgage or security interest in collateral related thereto.

"(2) PENALTY. Any person violating this section may be fined not more than $1,000. Each individual who is discriminated against under this section constitutes a separate violation."

to give every applicant an equal opportunity to obtain a loan, by evaluating the applicant's credit-worthiness on an individual basis, without referring to the presumed characteristics of a group or neighborhood." Sec. S–L 27.05 prohibits any lending practice which discriminates on the basis of sex, marital status, race, color, creed, national origin, ancestry, or geographic area.

Section 101.22, Stats., prevents discrimination, including on the basis of marital status in the financing of housing. The statute sets up a comprehensive procedure to handle grievances including investigation and conciliation by the equal rights division of the Department of Industry, Labor and Human Relations, determination by an examiner, review by the commission and, thereafter, if necessary to resolve the dispute, a trial de novo in a court of law. Sec. 101.22(5). Complaints against a savings and loan association are to be referred to and handled by the savings and loan commissioner. Sec. 101.22(8).

The state has devised and adopted as law a complete, all-encompassing plan for the treatment of applications for and granting of loans by savings and loan associations. It is the commissioner who is given the responsibility under ch. 215, Stats., to make sure that associations comply with the laws of Wisconsin and the United States. Regulation by the office of the commissioner is on a uniform statewide and industry basis. Regulation is intended to be based on experience in the lending industry, on complete information, with balanced concern for loan applicants on the one hand and for the financial stability of the association on the other. Access to the office of the commissioner is given to all members of the public and a specific procedure for those with complaints is conveniently provided.

Schenk did submit his complaint initially but claimed in his brief the office of the commissioner refused to take his complaint seriously. In this same brief, Schenk attaches a letter from the commissioner which states that based on the information submitted to the agency "there is not probable cause to believe that a law administered by this office has been violated." Being disappointed with the commissioner's determination, he complained to the Madison Equal Opportunities Commission. His remedy more appropriately should have been pursued through the established statutory and administrative procedures and then into the state courts for adjudication.

The Madison EOC upheld its examiner's decision, findings of fact, conclusions of law and order which ordered the following:

"1. Respondent [Anchor] cease and desist from discriminating against Complainant on the basis of marital status in the extension of credit and in making credit sales to the Complainant.

"2. Respondent pay to the Complainant the difference in cost between the loan Complainant applied for from Respondent and the loan Complainant received from First Federal Savings and Loan after rejection by Respondent to be calculated as follows:

"a. Based on $22,900, Respondent shall reimburse Complainant for the 0.5% annual interest difference between 9.25% and 9.75% over a ten-year (10 year) period beginning retroactively from January 10, 1978.

"b. Based on $24,000, the Respondent shall reimburse to Complainant the amounts, if any, by which the cost of the First Federal Loan, including but not limited to appraisal fees and loan fees and abstracting fees, exceeded the costs of the loan that Complainant would have received from Anchor Savings and Loan.

"3. Respondent shall immediately modify its underwriting standards to not consider court-ordered alimony and child support payments of any applicants as part

of the fixed-debt to income ratio, or to consider the analogous family expenses of all applicants as part of the fixed-debt to income ratio. Respondent shall forward a copy of the revised standard to the Madison Equal Opportunities Commission within thirty (30) days of receipt of this order."

By this order, the Madison Equal Opportunities Commission set the requirements and standards for loan qualification for Anchor in Madison. While the Madison EOC has jurisdiction in the city of Madison, that authority does not extend beyond the city's limits and, therefore, its determination may set a criteria not accepted elsewhere in the state as to lending practices. In addition to antidiscrimination standards in lending, consideration must be based on financial criteria and availability of money for loans within the lending institution, having in mind the depositors therein and the return on their investment and the financial stability of the association.

In *State ex rel. Michalek v. LeGrand*, 77 Wis. 2d. 520, 530, we considered a city of Milwaukee ordinance and state statute, both on the subject of rent withholding for local building code violations and the court stated: "They are not locomotives on a collision course. Rather each moves on its own track, parallel and not too far apart, traveling in the same direction." That is not true in the instant case since the collision course is obvious when the Madison EOC ordered Anchor to modify its underwriting standards, a subject preempted by ch. 215, Stats., which governs Anchor and other Wisconsin chartered savings and loan associations.

The regulation and control of Anchor's lending practices has been preempted by the state of Wisconsin in ch. 215, Stats., by establishing a comprehensive and all-encompassing scheme regarding savings and loan association practices, and therefore the Madison EOC was

without authority to review the refusal of Anchor to grant a loan to Roy U. Schenk on the basis of marital status discrimination. The application of the ordinance to Anchor's credit practice was contrary to the spirit of the state's structure of all aspects of credit and lending by savings and loan associations and was without authority and in conflict with the state comprehensive plan.

*By the Court.*—The decision of the court of appeals is reversed.

DAY, and ABRAHAMSON, JJ., took no part.