The **PAYDAY LOAN STORE OF WIS-CONSIN, INC. d/b/a Madison's Cash Express, Plaintiff,**

v.

**CITY OF MADISON, Defendant.**

No. 04–C—365–C.

United States District Court,
W.D. Wisconsin.

Aug. 31, 2004.

Joseph S. Goode, Milwaukee, WI, for Plaintiff.

Amanda J. Kaiser, Boardman, Suhr, Curry & Field, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action brought pursuant to 42 U.S.C. § 1983. Plaintiff The Payday Loan Store of Wisconsin contends that defendant City of Madison has enacted an ordinance that violates plaintiff's rights to equal protection and due process and is unconstitutionally vague. In addition, plaintiff contends that the ordinance is preempted by state law.

When plaintiff filed its complaint, it sought a preliminary injunction to prevent defendant from enforcing the allegedly unconstitutional ordinance. Defendant responded to the motion and submitted a motion for summary judgment at the same time, asserting that the legal principles determining the motions were the same. Defendant asked that its motion for summary judgment be addressed without allowing plaintiff time for discovery, arguing that any discovery would be unnecessary. I agreed that discovery would not assist plaintiff (because legislative decisions are "not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data," *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)), and gave its counsel an opportunity to advise the court whether he wanted an opportunity for additional briefing; he wrote to the court on August 12, 2004, to say that additional briefing would not be necessary and that the court should proceed to decide the motion.

I conclude that defendant's motion for summary judgment must be granted because plaintiff cannot show that defendant lacked any rational basis for legislating the nighttime closing of payday loan stores. Without such a showing, plaintiff cannot succeed on its claim that it was denied equal protection or that it was denied substantive due process. The clear wording of the ordinance defeats plaintiff's claim that it is unconstitutionally vague. Finally, plaintiff lacks any support for its contention that the ordinance is preempted by state law.

For the purpose of deciding this motion, I find from the findings of fact proposed by the parties in connection with the two motions that the following facts are material and undisputed.

## UNDISPUTED FACTS

Plaintiff The Payday Loan Store of Wisconsin, Inc., d/b/a Madison's Cash Express, is a Wisconsin corporation with its principal place of business in Chicago, Illinois. Defendant City of Madison is a body corporate and politic that may sue and be sued.

Plaintiff is a financial services company that operates five branches in Madison, Wisconsin. On November 7, 2003, it opened a new facility at 2722 East Washington Avenue. As of the time of the hearing on the motion for preliminary injunction, the facility was open 24 hours a day, seven days a week and was the only 24-hour business of its type in Madison.

All of plaintiff's payday loan customers have checking accounts and a large percentage of its check cashing customers have bank accounts. Plaintiff provides a number of services, including short-term licensed loans known as "payday loans," a currency exchange and check cashing operation, notary services, bill paying and facsimile and copy services. Plaintiff sells stamps, envelopes and bus passes and maintains a stand-alone ATM in its lobby.

Plaintiff is licensed by the Wisconsin Department of Financial Institutions to make short-term licensed loans. In a typical transaction, a borrower presents a paycheck stub, photo identification and a recent bank statement, completes a loan application and submits a post-dated check. Plaintiff completes a note and other loan documents and makes certain disclosures to the customer. It holds the post-dated check until the loan comes due and thereafter applies the check to pay off the loan unless the customer pays the loan in full before it has come due. Plaintiff charges $22 for each $100 borrowed for a two-week licensed loan.

Plaintiff is licensed by the Wisconsin Department of Financial Institutions to operate a community currency exchange business. In return for a fee, it agrees to cash payroll checks, insurance proceed checks, government checks and other third-party checks.

When plaintiff invested in the East Washington facility, it did so in anticipation that it would be able to operate 24 hours a day. When it began its planning, the business was a permitted use under defendant's zoning ordinance.

Plaintiff takes a number of steps to maintain security for its operation, including proper lighting, the use of safes and hourly sweeps and surveillance of all of its stores. The lighting inside and outside the store make the parking lot and store open to view.

On November 4, 2003, defendant's Common Council proposed a new ordinance, entitled "Hours of Operation for Payday Loan Businesses." Section (2) of the ordinance provided that no payday loan business could be open between the hours of 9 pm and 6 am. At a public meeting held on January 6, 2004, the council voted to adopt the ordinance with one dissenting vote. The mayor approved the ordinance on Jan-

uary 9, 2004 and it became effective fifteen days later.

On or about February 10, 2004, defendant agreed not to enforce the payday lending ordinance against plaintiff's currency exchange business pending a review of the language of the ordinance and plaintiff agreed not to make payday loans during the prohibited hours. On February 24, 2004, Alderperson Markle presented amendments to the ordinance to broaden the definition of payday loan business to include community currency exchange businesses. The Common Council adopted the amendments on May 18, 2004; the mayor approved them on May 24, 2004; and they took effect on June 8, 2004.

The ordinance does not prohibit ATM's, supermarkets, convenience stores and other similar businesses from disbursing cash between 9 pm and 6 am. Some ATM's allow eligible customers to take cash advances on their credit cards 24 hours a day.

## OPINION

### A. *Equal Protection*

■ To succeed on a claim that a legislative decision is violative of equal protection rights, a plaintiff must show that the legislation burdens a suspect class, affects fundamental rights or is not rationally related to any legitimate goal of government. *Johnson v. Daley,* 339 F.3d 582, 585 (7th Cir.2003). Plaintiff does not suggest that it is a member of a suspect class or that it has a fundamental right to run a payday loan operation 24 hours a day. Its entire case rests on its contention that the payday loan ordinance treats similarly situated entities differently. It allows the nighttime operation of ATM's and retailers that provide cash back from purchases while requiring payday loan stores to close at night. Moreover, it allows many busi-

nesses to operate between 9 pm and 6 am although they have the potential to affect residential neighborhoods through excessive noise and lights, while requiring payday stores to close during those hours. Plaintiff maintains that these distinctions are discriminatory and unsupported by a rational basis.

Plaintiff argues that it makes no sense to force it to close while allowing other businesses and ATM's to dispense cash throughout the night. If it is dangerous for individuals to leave its facility with large sums of case, it is equally dangerous for them to leave an ATM or a store that returns cash back on purchases. Defendant denies that ATM's and grocery stores are similarly situated to plaintiff because both of these facilities limit to well under $2000 the amount of cash that they will allow customers to withdraw or that they will give back on a purchase. Defendant argues that it had at least six reasons for differentiating between payday loan stores and other commercial establishments and ATMS: (1) Closing a cash-based business that advertises loans of up to $2,000 that can be obtained in minutes will deter nighttime crime activity; (2) persons who want to borrow money at 3 am may use that money to buy illegal drugs or engage in prostitution; (3) exiting a payday loan store at 3 am may make a person a target for criminal activity; (4) if police calls to payday stores are unnecessary, limited police resources can be devoted to other needs; (5) the presence of a 24–hour payday loan store sends a message that the neighborhood is of low quality; and (6) prohibiting payday loan stores from operating overnight will reduce the influx of non-residents traveling into a given neighborhood late at night to obtain cash.

█ It is not necessary (or permissible) to decide whether plaintiff's reasons for the ordinance are compelling or whether there is objective evidence to support them. When dealing with economic regulation, any "conceivable basis" for the classification is sufficient to justify it. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). Parties challenging legislation under the equal protection clause cannot succeed so long as "it is evident from all the considerations presented to [the legislature], and those of which [the court can] take judicial notice, that the question is at least debatable.' " *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) (quoting *United States v. Carolene Products Co.*, 304 U.S. 144, 153–54, 58 S.Ct. 778, 82 L.Ed. 1234 (1938)).

█ When the legislature has or could have had some evidence before it that reasonably supports a classification, challengers cannot prevail "merely by tendering evidence in court that the legislature was mistaken." *Clover Leaf Creamery*, 449 U.S. at 464, 101 S.Ct. 715. For this reason, it is irrelevant whether plaintiff's proposed facts show that serious crime is not a problem in the area of its East Washington Avenue store, that the actual number of police calls to plaintiff's stores is low, that plaintiff has taken steps to ensure the security of its employees and customers and that defendant had no evidence before it that plaintiff's stores are more apt to disturb nearby residences than are other businesses in the same area. It is irrelevant that Dr. Rick Lovell, an expert in the study of crime, crime patterns and crime deterrence and suppression, adduced evidence purporting to show that defendant's ordinance was based on misapprehensions about the relation of crime to the payday loan business and about the effectiveness of legislating against the nighttime operation of payday loan businesses in deterring crime. Legislative decisions "may be based on rational

speculation unsupported by evidence or empirical data." *Beach Communications,* 508 U.S. at 315, 113 S.Ct. 2096.

■ As I noted in the order denying plaintiff's motion for a preliminary injunction, "[t]he city council could speculate rationally that people emerging from a payday loan store with large amounts of money in their pockets would be involved in crime, either as victims of robbery or as customers for illegal drugs or prostitution." Aug. 5, 2004 Order, dkt.# 33, at 3. It goes without saying that communities have an interest in preventing crime. Whether the payday loan ordinance is the best method of prevention is not the issue. It is the legislative body's prerogative to choose the steps it wishes to take to advance its goals. *National Paint & Coatings v. City of Chicago,* 45 F.3d 1124, 1127 (7th Cir.1995).

■ It is not relevant that the legislation leaves unregulated other conduct that seems equally undesirable. Legislatures are permitted to legislate in small increments and deal with the problems they deem most acute. *Johnson,* 339 F.3d at 586–87 (citing *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955)). Thus, it does not matter whether plaintiff has evidence that users of ATM machines are just as likely targets for robbers as are customers of payday loan stores, or whether other commercial establishments on East Washington Avenue are noisier, have brighter lighting or attract more nighttime traffic. The common council could have believed that closing payday loan stores at night would help reduce crime and help reduce the total amount of nighttime traffic, noise and bright lights in the area. The legislature need not address all 24–hour operations at one time. "[S]cope-of-coverage provisions" are virtually unreviewable" because the government "must be allowed leeway to approach a perceived problem incrementally." *Beach Communications,* 508 U.S. at 316, 113 S.Ct. 2096. "If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied." *Minnesota ex rel. Pearson v. Probate Court of Ramsey County,* 309 U.S. 270, 275, 60 S.Ct. 523, 84 L.Ed. 744 (1940). Because plaintiff cannot show that the council could not have believed that the Payday loan ordinance would help reduce crime, nighttime traffic and noise, it has failed to show that the regulation violates its equal protection rights.

### B. *Due Process*

■ Plaintiff asserted a claim of violation of due process, but it rests on the same ground as his equal protection claim that the ordinance has no rational basis. Plaintiff is not asserting that it was denied any procedural rights to which it was entitled. Therefore, its due process claim falls with its equal protection claim. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 470 n. 12, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) ("From our conclusion under equal protection, however, it follows *a fortiori* that the [ban on plastic nonreturnable milk containers] does not violate the Fourteenth Amendment's Due Process Clause: *National Paint,* 45 F.3d at 1129 refusing to consider claim that ordinance violates substantive due process rights; economic regulation must be evaluated under equal protection principles"); *see also Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ("Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, ' that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' ")

## C. *Vagueness*

Plaintiff argues that the ordinance does not give the "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). It contends that the ordinance does not provide fair notice of the extent to which it may operate between 9 pm and 6 am because it does not make clear whether plaintiff can continue to offer services other than currency exchange and payday loans during the nighttime hours.

Vague laws present two kinds of problems. The first is the one just noted, which is that persons of ordinary intelligence will not know how to conform their conduct to the law. The second is the lack of explicit standards for application of the law, with the consequence that persons charged with enforcement of the law may act arbitrarily and discriminatorily. *Grayned,* 408 U.S. at 108–09, 92 S.Ct. 2294.

The vagueness doctrine is enforced most strictly when the law interferes with free expression or the exercise of other constitutional rights. *Brockert v. Skornicka,* 711 F.2d 1376, 1381 (7th Cir. 1983). Economic regulation is subject to a less stringent analysis because such "regulation usually deals with a narrower subject and those affected by it are more likely to consult the law, seeking clarification if necessary, in order to plan their behavior." *Id.* (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). Moreover, legislation that has civil rather than criminal penalties is given great leeway "because the consequences of imprecision are qualitatively less severe." *Id.* at 498–99, 102 S.Ct. 1186.

The payday loan ordinance is economic regulation that imposes only civil sanctions. Therefore, it does not require the high degree of clarity that would be necessary for an ordinance that impinged on free speech or another constitutional right. Nevertheless, it is clear both on its face and as applied. It prohibits any payday loan business from being open between 9 pm and 6 am. Plaintiff operates a payday loan business that cannot be open during the prohibited hours, even if plaintiff is not engaging in the business of making payday loans or operating a currency exchange during that time. The ordinance does not prohibit "engaging in payday loan activities" during nighttime hours; it says that the business cannot be open. Persons of ordinary intelligence can understand the ordinance's prohibition. Law enforcement personnel can enforce the ordinance: if a payday loan business is open after 9 pm or before 6 am, it is in violation of the ordinance and subject to a civil fine. The ordinance poses no danger of arbitrary or discriminatory enforcement.

## D. *Wisconsin Constitution*

It is not necessary to address plaintiff's allegations of violations under the equal protection and due process violations of the Wisconsin Constitution. Plaintiff concedes that there is no substantial difference between the federal and the state provisions. Plt.'s Reply Br., dkt. # 27, at 3. *State ex rel. Briggs & Stratton v. Noll,* 100 Wis.2d 650, 657, 302 N.W.2d 487 (1981) (" 'It is well settled by Wisconsin case law that the various freedoms preserved by sec. 1, art. I, Wis. Const., are substantially the equivalent of the due-process and equal-protection-of-the-laws clauses of the Fourteenth amendment to the United States constitution.' ") (quoting *Haase v. Sawicki,* 20 Wis.2d 308, 121 N.W.2d 876 (1963)).

Therefore, the conclusions I have reached concerning plaintiff's federal con-

stitutional claims are equally applicable to its state constitutional claims.

### E. *Preemption by State Law*

For its last argument, plaintiff contends that the ordinance is preempted by state law. Like plaintiff's state constitutional issues, this argument does not implicate any federal issue and it would be permissible to dismiss it on that ground, rather than exercise supplemental jurisdiction over it. 28 U.S.C. § 1367(c)(3). However, I believe it would advance judicial efficiency to decide it along with the federal questions. *Burrell v. City of Mattoon,* 378 F.3d 642 (7th Cir.2004); *see also City of Chicago v. International College of Surgeons,* 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) ("[W]hen deciding to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'") (*quoting Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). I will address the preemption issue for the sake of judicial economy because it does not raise any novel, complex or unsettled issue of state law.

It is undisputed that municipalities have the power to act for the government and good order of the city and for the health, safety and welfare of the public, Wis. Stat. § 62.11(5), only when dealing with the local affairs and government of municipalities, Wis. Const. Art. XI, § 3, and that they lack the power to legislate with regard to matters of statewide concern. Plaintiff argues that the ordinance oversteps defendant's authority in two respects. First, it provides that a payday loan operation and a currency exchange operation cannot be operated together in Madison and must be at least 5,000 feet from each other, in direct violation of the express provision in Wis. Stat. § 138.09(3)(e)1e that such businesses may

be run out of the same building. Second, the state regulates payday loan businesses and community currency exchange businesses and defendant's ordinance violates the spirit of the state regulatory system by disallowing legitimately licensed businesses from operating.

 As to the first challenge, plaintiff has failed to show that it has any standing to raise it. The provision requiring 5,000 feet of separation between payday loan businesses does not apply to any of plaintiff's businesses now in operation in Madison (and it is highly doubtful that the ordinance prohibits the operation of payday loan and currency exchange businesses on the same premises). If and when plaintiff is denied permission to open another such business because of this restriction, it may be able to satisfy the elements of standing, which require an injury in fact, a causal relation between the injury and the challenged conduct and a likelihood that the injury will be redressed by a favorable decision, *Lee v. City of Chicago,* 330 F.3d 456, 468 (7th Cir.2003) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). At this time, when plaintiff has not shown that it is suffering or about to suffer "an invasion of a legally protected interest that is concrete and particularized," *id.,* this court lacks jurisdiction to entertain plaintiff's challenge to the ordinance as preempted by state law.

 As to the second challenge, plaintiff has not established any conflict between the state's regulations of plaintiff's payday loan and currency exchange operations and the ordinance. The state regulations concern licensing and the regulation of consumer transactions, including record keeping and limitations on advertising. They have nothing to do with hours of operation or location of businesses.

Plaintiff maintains that the ordinance "violates the spirit of the state regulatory system by disallowing legitimately licensed businesses from operating." Plt.'s Br., dkt. # 4, at 46. Plaintiff misstates the effect of the ordinance. It does not prevent legitimately licensed businesses from operating; it merely says where they can operate and during what hours. It does not violate the spirit of the state regulatory system.

Plaintiff cites a Wisconsin case, *Anchor Savings & Loan Ass'n v. Madison Equal Opportunities Comm'n*, 120 Wis.2d 391, 355 N.W.2d 234 (1984), in support of its position, but that case is nothing like this one. In *Anchor Savings*, the issue was whether a state-chartered savings and loan had acted properly in denying a loan to a divorced man. The savings and loan had considered the applicant's court-ordered support and maintenance payments as fixed expenses, disqualifying him for a loan, whereas if he had been married, the same money would have deemed flexible expenses and he would have been granted a loan. The applicant complained to the Madison Equal Opportunities Commission, which held that Anchor had violated a local ordinance prohibiting creditors from discriminating on the basis of marital status. Anchor appealed, contending that the City lacked authority to regulate its lending practices. The Supreme Court of Wisconsin agreed, holding that the commission's decision conflicted with the comprehensive legislative scheme governing all aspects of credit and lending.

Telling a state-chartered savings and loan association how to calculate a loan applicant's qualifications for a loan is a far cry from telling a state-licensed payday loan operation where it may locate its business and what hours it may operate. These latter matters have nothing to do with the state's legislation and regulations regarding the loans themselves and the licensing and responsibilities of loan providers.

I conclude that defendant has shown that it is entitled to summary judgment on all of the claims raised by plaintiff in its complaint.

## ORDER

IT IS ORDERED that defendant City of Madison's motion for summary judgment is GRANTED. The clerk of court is directed to enter judgment for defendant City and close this case.