HAYES and others, Appellants, v. ADAMS COUNTY and others, Respondents.*

*January 11—February 6, 1962.*

* Motion for rehearing denied, with $25 costs, on April 3, 1962.

576

For the appellants there was a brief by *Rogers & Owens* of Portage, and oral argument by *Harlan B. Rogers.*

For the respondents there was a brief and oral argument by *R. E. Gieringer,* district attorney, and *Donald L. Hollman,* special counsel.

DIETERICH, J.   The only issue on this appeal is whether the pleadings and supporting affidavit of the plaintiffs set forth sufficient evidentiary facts, including copies of documentary evidence, so as to entitle the plaintiffs to summary judgment.

The rule is: There must be no unresolved material issues of fact existing in the record. If there are, or if inferences must be drawn from the facts either to support or deny the application of the propositions of law advanced, this court

cannot grant summary judgment. It is not the function of this court to resolve material questions of fact or to draw inferences which may be doubtful or uncertain, but to determine if such questions of fact exist. *Zeablatt v. Sampson* (1961), 12 Wis. (2d) 303, 107 N. W. (2d) 122, and *Voysey v. Labisky* (1960), 10 Wis. (2d) 274, 103 N. W. (2d) 9.

The following facts are related from the record: The plaintiffs, Charles J. and Mary Ann V. Hayes, acquired title to a farm located in Adams county in 1945. They executed a real-estate mortgage to one Mary Norlock, the coplaintiff, in 1956. The plaintiffs did not pay the real-estate taxes on the land in question for the years 1953, 1954, 1955, and 1956.

In 1938, Adams county adopted the following resolution incorporating the provisions of sec. 74.44, Stats. 1937.

"Be it resolved, by the county board of supervisors of Adams county, Wisconsin, that the county treasurer of Adams county, Wisconsin, be and he is hereby authorized, empowered, and directed, for and in the name of the county, to bid in and become the exclusive purchaser of all lands sold for taxes, for the amount of taxes, interest, and charges remaining unpaid thereon.

"Be it further resolved, that all laws relating to the sale or purchase of lands sold for the nonpayment of such taxes, and to the redemption of such lands, shall apply and be deemed to relate to the sale or purchase of such lands by the county.

"Be it further resolved, that the said county treasurer, be and hereby is authorized and empowered to sell, transfer, or assign any of such certificates so acquired or purchased by the said county, to the owner or owners of any of such real estate and to any mortgagee or lienholder on any such lands or to any heir, legatee, devisee, executor, or administrator, having an estate or interest therein; proof of such interest and title shall be furnished by said applicant or

purchaser and filed in the office of such county treasurer in the form of an affidavit fully setting up and showing their title or interest.

"Be it further resolved, that any ordinance or parts of any ordinance or resolution inconsistent herewith, be and the same is hereby repealed.

"Be it further resolved, that this ordinance and resolution shall be and become effective immediately upon its passage and adoption."

Pursuant to the 1938 resolution Adams county purchased all tax certificates issued with respect to the real estate in question. The first certificate, for the year 1954, stated that Adams county would be entitled to a deed of conveyance of said real estate three years from date (October 19, 1954).

Notice was given to the plaintiffs, Charles J. and Mary Ann V. Hayes, on April 25, 1958, and to the Grand Marsh State Bank, which bank had a paid-up mortgage which was still of record. On April 30, 1958, notice was given to Mary Norlock, the coplaintiff. The notices contained a legal description of the real estate, the amount of taxes due, the interest and charges, and stated that in three months a tax deed would be applied for.

On or about August 6, 1958, Mary Ann V. Hayes paid the county treasurer $117.13, which amount was applied to the payment of taxes for the current year of 1957. Subsequently, on November 3, 1958, the county clerk wrote the plaintiffs a letter informing them that unless the taxes for 1953 and thereafter were paid, a tax deed would be taken on the farm.

On December 12, 1958, Adams county took a tax deed on a portion of the real estate and subsequently, on May 19, 1959, a tax deed was issued for the remainder of the real estate for all delinquent taxes due. Then, pursuant to the

1947 resolution [1] of the Adams county board of supervisors, the town board appraised the real estate. The real estate was noticed for sale, sealed bids taken and accepted, and sold to the highest bidders, George and Adelyne Zebell. The plaintiffs on August 6, 1959, petitioned Adams county to set aside the tax deeds, including the real estate sold to Zebells, and permit them to redeem the land by paying delinquent taxes. On August 18, 1959, Adams county quitclaimed the real estate to George and Adelyne Zebell.

On September 1, 1959, the county clerk read the petition to the county board and the board of supervisors placed the petition of the plaintiff, Charles Hayes, on file and took no action for the reason that the real estate had been sold and Adams county could no longer deed such real estate to Charles Hayes.

The trial court denied the plaintiffs' motion for summary judgment after making two determinations: (1) The trial court in its memorandum opinion determined that the resolution passed in 1938, by Adams county satisfied the requirements of sec. 75.36 (2), Stats. 1957,[2] which requires that a resolution be adopted authorizing the county clerk to issue a tax deed to the county. (2) The court found that there was an issue of fact as to whether plaintiffs had been victims

---

[1] "Mr. Banovec moves that the town supervisors and the supervisors of Friendship and Adams city act as appraisers for county-owned land as it becomes salable. Said land to be located in their respective towns, cities, and villages. Further, said appraisers are to furnish the land description and the appraised value to either the county clerk or county treasurer. Motion seconded and carried."

[2] "*When and how tax deed given.* When any lands upon which the county holds a tax certificate shall not be redeemed as provided by law, the county clerk shall execute to the county, in his name of office, a deed therefor, witnessed, sealed, and acknowledged, and in like form as deeds to individuals; and such deeds shall have the same force and effect as deeds executed by such clerk to individuals for lands sold for the nonpayment of taxes; but no such deed shall be issued until the county board shall, by resolution, order the same."

of fraud on the part of county officials when tax moneys paid by plaintiffs were applied to the current taxes of 1957, rather than the delinquent taxes of 1954.

The plaintiffs contend that the 1938 resolution did not authorize the county clerk to issue a tax deed to the county and that no subsequent resolution authorizing the county clerk to issue a tax deed was ever passed by the county board, and therefore their motion for summary judgment should have been granted by the trial court.

The law is settled in Wisconsin that a separate resolution is not necessary every time the county clerk issues a tax deed to the county if a resolution granting continuing authority to issue tax deeds has been passed by the county board. *Mead v. Nelson* (1881), 52 Wis. 402, 8 N. W. 895, and *Bemis v. Weege* (1886), 67 Wis. 435, 30 N. W. 938.

The 1938 resolution authorizes the county treasurer under sec. 74.44, Stats., to purchase delinquent tax certificates and not the county clerk. It further provides that all laws relating to the sale, purchase, and redemption of the certificates by the county treasurer shall apply to the county.

The three-year redemption period provided by statute [3] was observed by the county and adequate notice was given before the issuance of the tax deeds.[4] The only manner in which the procedure observed by the county differs with respect to the procedure an individual is required to follow

---

[3] Sec. 74.46. ". . . be entitled to a deed of conveyance of said lands in three years . . ."

Sec. 75.19. "FORECLOSURE OF CERTIFICATES. The holder of any tax certificate may, at his option, in lieu of taking a tax deed, at any time after . . . three years from the date of such certificate, and before he would be debarred from demanding a tax deed thereon, . . ."

[4] Sec. 75.12(1). "No tax deed shall be issued on any lot or tract of land which has been or shall hereafter be sold for the nonpayment of taxes unless a written notice of application for tax deed shall have been served upon the owner, . . ."

in obtaining a tax deed is that the county board must pass a resolution authorizing the county clerk to issue the tax deed to the county, while no resolution is necessary to issue a tax deed to an individual.[5]

The requirement of sec. 75.36 (2), Stats., that no deed shall be issued until the county board shall by resolution order the same, affords protection to the county and not the taxpayer. This being so, it follows that a subsequent ratification by the county board of the instant action of the county clerk in issuing the two tax deeds to the county would be sufficient compliance with the statute.

There is present in this record the resolution of the county board for appraisal of county lands set forth in footnote 1. Whether or not this resolution in itself would constitute ratification presents a substantial issue of fact which must be resolved by the introduction of material evidence respecting such issue and cannot be resolved on summary judgment. Other evidence may also develop at the trial establishing ratification by the board.

It, therefore, necessarily follows that trial must be had on all issues raised by the pleadings.

*By the Court.*—Order affirmed.

---

[5] Sec. 75.14 (1). ". . . county clerk shall, . . . on presentation to him of the certificate of such sale and proof of service of notice, execute . . . to the purchaser, his heirs or assigns, a deed of the land so remaining unredeemed, . . . and such deed duly witnessed and acknowledged shall be presumptive evidence of the regularity of all the proceedings, from the valuation of the land by the assessor up to and including the execution of the deed, and may be recorded with the like effect as other conveyances of land."