BAUERMEISTER and others, Appellants, v. TOWN OF ALDEN, Respondent.

*February 8—March 6, 1962.*

112

For the appellants there was a brief by *Doar & Knowles,* and oral argument by *W. T. Doar, Jr.,* and *James A. Drill,* all of New Richmond.

For the respondent there was a brief by *Allen Kinney* of Amery, and *Edwin J. Larkin* of Eau Claire, and oral argument by *Mr. Larkin.*

FAIRCHILD, J.    This action was founded upon sec. 74.73, Stats., authorizing recovery of an unlawful tax. Although the circuit court found that several plaintiffs had not fulfilled all procedural requirements of that section, and of sub. (4) in particular, it is clear that a number of plaintiffs had done so, and their causes of action were considered on the merits.

The gist of the complaint was that plaintiffs' properties were assessed at a higher percentage of full value than was other property in the town. Plaintiffs established that their properties were assessed at a higher percentage than six farms. The circuit court deemed this proof insufficient for recovery under sec. 74.73, Stats.

Sec. 74.73 (2), Stats., provides, in part:

". . . no action shall be maintained under the provisions of this section unless it shall appear that the plaintiff has paid more than his equitable share of such taxes."

It has often been held "that there must be some defect going to the groundwork of the tax . . . before sec. 74.73, Stats., can be invoked—. . . 'a defect or irregularity that necessarily affects the principle of the tax and shows that it must be unjust and unequal . . . illegality or irregularity that results in an inequitable burden.' " [1]

Proof that property of an aggrieved taxpayer was assessed at a higher percentage of full value than certain other property is insufficient where the latter is a small percentage of the property in the taxing district. The explanation is that such proof is consistent with the possibility that the great bulk of the property in the district may have been assessed at an even higher percentage of full value than that of the aggrieved taxpayer and that he must show such a general undervaluation of the other property of the taxing district as will result in an excessive tax as to him. [2]

Taxpayers have, on the other hand, been allowed to recover where it was admitted that the bulk of property in the taxing district had been assessed at a much lower percentage of full value than their property. [3]

Plaintiffs here do not contend that they are entitled to recover merely because they have shown that their 13 properties were assessed at a higher percentage than six other properties. Their theory is that they have shown a pattern

[1] *Barker Lumber Co. v. Genoa City* (1956), 273 Wis. 466, 469, 78 N. W. (2d) 893.

[2] *State ex rel. Walthers v. Jung* (1921), 175 Wis. 58, 61, 183 N. W. 986.

[3] *Barker Lumber Co. v. Genoa City, supra,* footnote 1; *Yawkey-Bissell Corp. v. Langlade* (1952), 261 Wis. 524, 53 N. W. (2d) 174.

of assessing all farm property, which apparently makes up the bulk of the town of Alden, at lower percentages of full value than lakeshore property. They argue that the remedy provided by sec. 74.73, Stats., is valueless where the assessor does not admit making a discriminatory assessment, if a plaintiff must prove the full value of all or even half the farms in the town in order to establish that discrimination has been practiced.

The real issue here is whether the proof presented by plaintiffs and believed by the circuit court compelled the circuit court to find that in the town of Alden farms generally were assessed at a lower percentage of value than lakeshore property.

We think that if there were such general discrimination in favor of farm property, it would be possible to produce sufficient proof without showing the values of all the farms in the town and comparing them with the assessments. A relatively small number of farms would suffice if it were shown that these constituted a representative sample and that they were consistently underassessed. In the record before us there is nothing to show how the six farms used for comparison were selected. Had six farms (or preferably several more) been selected completely at random from all the farms in the town and had the resulting comparisons produced percentages consistently lower than the percentages shown for plaintiffs' properties, the trier of the fact might properly have drawn the inference that the assessor was discriminating in favor of farm property and that an inequitable burden was thus imposed on plaintiffs.

Aside from lack of proof that the farms as to which evidence was offered constituted a representative sample, there are two further reasons for doubting the validity of the inference which plaintiffs say must be drawn.

The town called a witness with many years of wide experience as an assessor and appraiser. He testified that he examined a tabulation of sales of farms and lake properties in the town of Alden in 1957, 1958, and 1959. He eliminated quitclaim deeds, land contracts, and government-agency transfers, and compared the sales prices in the remaining transactions with the assessments on the lands sold. He found that in each year the particular farms sold were assessed at a higher percentage of the respective sales price than the particular lakeshore properties sold in the same year. The number of farm sales in each year varied from three to six, and the number of lakeshore properties from four to 11. These facts tend to show that there was no discrimination in favor of farms at least in the assessment of the particular properties sold.

The state department of taxation through its supervisors of assessments has supervision of local assessors.[4] The department compiles data as to prices obtained on sales of real estate and from this and other data, applying such statistical methods as it deems sound, estimates the full or "equalized" value of real estate and personal property in each taxing district in the state. The statutes prescribe that these figures are to be used in making many important allocations of benefits and burdens among school districts and other governmental units.[5]

We take judicial notice of the fact that the department determined that in 1959 in the town of Alden, the assessed

[4] Sec. 73.06, Stats.

[5] See Report to Committee Created by Joint Resolution 84 Appointed to Study Present Process of Determining Full or Equalized Values of Property, March 27, 1956, by Forrest W. Gillett, Director, Division of General Property, Wisconsin Department of Taxation.

value of all real estate was 99.2 percent of full value, and the assessed value of all real estate and personal property combined was 95.6 percent of full or true value. Such administrative statistical estimate is not conclusive and under some circumstances would have little or no weight. Here, however, where plaintiffs are asserting that the court must accept the facts shown as to a small number of real properties as establishing facts true of all similar real properties, it is of some significance that the department, following its own statistical methods, arrived at a result which does not support the plaintiffs' contention.

The parties in the trial court seem to have directed their attention to the total assessed valuation of real estate in the town ($2,935,000), and various percentages were computed on that figure. The record suggests that the total 1959 assessment of all taxable property in the town of Alden, including personal property, was $3,668,000. The assessed valuations of the 13 lakeshore properties and the six farms would be an even-smaller percentage of that figure.

*By the Court.*—Judgment affirmed.