MILES, and wife, Plaintiffs-Appellants, v. MACKLE BROS., DIVISION DELTONA CORPORATION, and another, Defendants-Respondents.

*No. 792 (1974). Argued May 3, 1976.—*
*Decided June 2, 1976.*
(Also reported in 242 N. W. 2d 247.)

For the appellants there was a brief and oral argument by *David A. Grant* of Milwaukee.

For the respondents there was a brief and oral argument by *Francis X. Krembs* of Milwaukee.

DAY, J. The judgment appealed from dismissed the complaint against the defendants, and the order denied the plaintiffs' motion for a new trial or, in the alternative, vacation of the judgment and amendment of the pleadings to state a cause of action for fraud and reformation of a deed. The issues on appeal are (1) whether the provisions of a purchase contract were merged in a subsequent deed and (2) whether the trial court abused its discretion in refusing to allow an amendment of the pleadings.

In February, 1967, plaintiffs, Gordon Miles and his wife Delores, participated in a trip to Florida sponsored by defendant Robert Frost Realty, Inc., a Wisconsin corporation and agent for defendant Mackle Bros., Division Deltona Corporation ("Mackle Bros."), a Florida corporation. The advertised purpose of the trip was promotion of sales of land owned by Deltona Corporation in Volusia county, Florida. The Mileses did agree to purchase a lot during the course of the trip, and executed an "Agreement of Purchase and Sale" on February 19, 1967, which provided, among other things:

"Mackle Bros. agrees to pay all taxes on this property until it is paid for in full."

and .

"Mackle Bros. will convey title to this property free and clear, subject to applicable zoning ordinances, public utility easements, taxes for the year in which title is acquired and restrictions of record common to the neighborhood."

The purchase price of the property was $1,420, of which $710 was paid on February 19, 1967. The balance was

paid three months later. On September 7, 1967, Mackle Bros. sent to the Mileses a recorded warranty deed conveying the lot which recited that:

"This deed is executed subject to restrictions, reservations, and easements of record and taxes for the year 1966 & 67."

Gordon Miles testified that after receiving the deed, in which he noted that the 1966 and 1967 taxes were unpaid, he called Robert Frost Realty and wrote to Mackle Bros. and to Volusia county. He received no reply from Volusia county. After a second letter to the county sometime in 1968, the Mileses were sent a tax bill for 1968 with no reference to any delinquency for 1966 and 1967. The Mileses paid the 1968 taxes and also the 1969 and 1970 taxes. Mr. Miles testified that he never specifically inquired about the 1966 or 1967 taxes after receiving the 1968 tax bill, nor did he further inquire of Mackle Bros. either by correspondence or during a trip in 1970 when he visited the Mackle Bros.' office.

The Mileses received a letter from Volusia county dated February 11, 1972, informing them that their lot had been foreclosed upon by the county for nonpayment of 1966 taxes. The letter also stated that he had been mailed a copy of the legal advertisement which advised of foreclosure proceedings against certain parcels of land which were tax delinquent, including the Mileses' lot. In the legal advertisement, however, their lot was listed under ownership of "James R. & Bridgette B. Redin."[1]

At the close of plaintiffs' case, a nonsuit was granted to the defendant, Robert Frost Realty, Inc. A motion by plaintiffs to amend the pleadings to conform with proof of fraud was denied on the ground that there was no

---

[1] The record does not show it, but the Mileses note in their brief that the Redins were previous owners of the lot and had sold it to Mackle Bros. sometime in February, 1967, apparently shortly before the purchase by the Mileses.

proof of fraud, since the deed clearly sets forth the encumbrance of the 1966 and 1967 taxes.

The defense introduced attested copies of the complaint and final decree in the Florida foreclosure suit and rested its case. A defense motion for a directed verdict as to Mackle Bros. was granted on the basis of the court's finding that the inconsistent provisions of the prior purchase contract concerning payment of taxes were "merged" into the later deed, and that when the Mileses accepted the deed, the obligation of Mackle Bros. to pay the 1966 taxes ceased. Judgment was entered dismissing the complaint.

Neither of the parties has raised the issue of whether Florida law governs the interpretation of this contract and deed. Both have argued on the basis of Wisconsin law; and we will apply the *"lex fori,"* the law of Wisconsin.

The first question presented on this appeal is whether the doctrine of "merger" applies; in other words whether the agreement in the purchase contract survived when the deed accepted by the Mileses specifically excepted the 1966 and 1967 taxes from its covenants.

Textual authorities explain and digest hundreds of cases concerning the merger principle. 77 Am. Jur. 2d, *Vendor & Purchaser,* p. 448, sec. 290; 26 C. J. S., *Deeds,* p. 842, sec. 91; 8A Thompson, *Real Property,* p. 331, sec. 4458; 6 Corbin, *Contracts,* pp. 310–312, sec. 1319. Annot. (1954), 38 A. L. R. 2d 1310 (cited in *Oremus v. Wynhoff* (1963), 20 Wis. 2d 635, 641, 123 N. W. 2d 441) states in summary (at pages 1312, 1313) :

"If there were no other evidence, it would appear that a deed entered into between vendor and vendee would have the effect of extinguishing unfinished obligations of the vendor arising from a prior contract of sale. In other words, the delivery and acceptance of an executed deed is considered, prima facie, to merge or supersede the provisions of an antecedent contract which imposes obliga-

tions upon the vendor. This rule appears to have an almost universal acceptance. At least, it can be said that no court has expressly disapproved the rule, while the great majority have specifically mentioned it, even where the situation is one in which strict application is avoided."

An exception to the doctrine of merger applies when the provisions in the purchase contract are deemed "collateral" to the functions of the deed; that is, they are of such a nature as to permit an inference that the parties did not intend to extinguish them in the deed. Generally these are of a type that are intended to be performed even after the delivery of a deed, such as warranties as to the conditions of the property or agreements to make improvements or repairs. *See:* 38 A. L. R. 2d 1310, *supra.*

The leading Wisconsin case on this subject is *Oremus v. Wynhoff* (1963), 20 Wis. 2d 635, 123 N. W. 2d 441, where this court held that a provision in the purchase contract requiring that three apartments in the subject building be rented did not survive the delivery of a deed making no reference to this agreement where both buyer and seller knew at the time of closing that the contemplated leases had not been procured. This court stated (20 Wis. 2d at page 641):

"The duty to rent the apartments did not survive the delivery of the deed. While it is possible for collateral undertakings to survive the consummation of a real-estate sale, such undertakings must be apparent from the preliminary contract or made a covenant in the deed."

In this case, taxes were specifically referred to in the purchase and sale agreement and also specifically referred to in the deed. No item in the purchase contract can be said to be "collateral" that is specifically and expressly provided for in the deed, as were the taxes in this case. To hold that this deed is ineffective to amend the prior contract would be to hold that a purchase con-

tract is a final, irrevocable statement of obligations of the parties.

It is undisputed that when the deed was delivered it clearly set forth that the 1966 taxes had not been paid. The plaintiffs were under no obligation to accept this deed, in view of the provisions of the purchase contract, and could have refused it at this point. However, the plaintiffs accepted and understood the deed as shown by their subsequent actions, but failed to take any steps to protect their interests. There is no evidence in this record that the Mileses ever inquired specifically about the 1966 or 1967 taxes; the only testimony is that they wrote to Mackle Bros. and Volusia county and were sent the 1968 tax bill. There is no evidence that Volusia county records, which would presumably have shown the tax lien, were not in order, or that Mr. Miles either during his 1970 trip, or through Mackle Bros., made any attempt to check them. There is no evidence that the Miles did not receive the notice of foreclosure which Volusia county stated it had sent to his established address. The Mileses did not start an action contesting the deed until July 17, 1972, almost five years after the initial acceptance of the deed.

The second issue is whether the court abused its discretion in denying the motion of the Mileses to amend their complaint to allege fraud under the theory that the proof adduced in the trial had shown fraud on the part of the defendants. The Mileses concede in their brief that fraud must be proved by clear and convincing evidence. The elements are as follows:

"The elements of fraudulent misrepresentation are well established in the case law: First, there must be a false representation; second, it must be made with intent to defraud and for the purpose of inducing another to act upon it; and third, such other person must rely on it and be induced to act, to his injury or damage." *Goerke v. Vojvodich* (1975), 67 Wis. 2d 102, 107, 226 N. W. 2d 211.

██ ██ The essence of fraud is concealment; here, there certainly was no concealment of the 1966 tax obligation. Therefore, there was no showing here of an intent to defraud. Fraud was not proved in this case, as the trial court found. In any case, the court's refusal to allow this new cause of action was a discretionary act reversible only for clear abuse.[2] The refusal to allow amendment here was clearly not an abuse of discretion.

*By the Court.*—Judgment and order affirmed.

---

[2] *Troy Co. v. Perry* (1975), 68 Wis. 2d 170, 178, 228 N. W. 2d 169:

"It is within a trial court's discretion to permit or refuse the allegation of a new cause of action to conform with the proof, and unless there is a clear abuse of that discretion, the trial court's decision will not be disturbed."