JACKSON COUNTY, Plaintiff-Appellant,

v.

STATE of Wisconsin Department of Natural Resources, Jackson County Sanitary Landfill, Inc. and Thomas McNulty, Defendants-Respondents.

Supreme Court

*Nos. 2004AP2582 & 2005AP545. Oral argument March 2, 2006.—Decided July 11, 2006.*

2006 WI 96

(Also reported in 717 N.W.2d 713.)

For the plaintiff-appellant, there were briefs by *Brian E. Butler, Richard C. Yde, Daniel P. Gustafson,* and *Stafford Rosenbaum LLP,* Madison, and oral argument by *Brian E. Butler.*

For the defendant-respondent State of Wisconsin Department of Natural Resources, the cause was argued by *Thomas J. Dawson,* assistant attorney general, with whom on the briefs (in the court of appeals) was *Peggy A. Lautenschlager.*

For the defendants-respondents Jackson County Sanitary Landfill, Inc., and Thomas McNulty, there was a brief by *Eric M. McLeod, Roisin H. Bell,* and *Michael Best & Friedrich LLP,* Madison, and oral argument by *Eric M. McLeod.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This case comes to us on certification from the court of appeals. We have accepted the certification and decide only one issue: whether Jackson County (County) can rescind the County's tax deed that transferred ownership of property containing a landfill to the County, thereby unilaterally returning ownership to the prior owner, Jackson County Sanitary Landfill (JCSL), without the prior owner's consent. We conclude that the County lawfully issued the tax deed. We also conclude that when the County accepted the tax deed, all property rights vested in fee simple in the County. Because the County has no statutory authority to rescind a tax deed that was lawfully issued and thereby unilaterally impose property ownership on a third party, its attempted rescission has no effect on ownership of the property containing the landfill. Therefore, we affirm the circuit court's conclusion in that regard, and, as suggested in the certification,[1] we remand to the court of appeals to decide the remaining issues this case presents.

---

[1] The certification provides, "If the supreme court . . . concludes that the County is the owner of the landfill, the court may wish to address the proper disposition of the County's claims regarding its responsibility for landfill costs and liabilities, or it

## I. BACKGROUND

¶ 2. The relevant facts are undisputed. JCSL owned and operated a landfill in Jackson County. JCSL was licensed by the Department of Natural Resources (DNR) to operate a solid waste facility. The DNR's plan for the care of the landfill included the establishment of an escrow account into which JCSL made payments for the long-term care and maintenance of the landfill.

¶ 3. In 1998, JCSL stopped paying real estate taxes on the property that contains the landfill. In June of 2000, the landfill reached its authorized capacity and JCSL began closure. The County pursued tax delinquency proceedings against JCSL by issuing a tax certificate for unpaid taxes on the property. Because JCSL continued in its nonpayment of real estate taxes and did not redeem the tax certificate, in 2002 the county clerk issued a tax deed to the County. The County accepted, recorded and re-recorded the tax deed. Therefore, pursuant to Wis. Stat. § 75.14(1) (2001–02), the County's actions had certain legal consequences.[2]

¶ 4. Wisconsin Statute § 75.14(1) states:

> If any land subject to a tax certificate shall not be redeemed the county clerk shall, after the expiration of time prescribed by law for the redemption thereof, on

may remand those issues to this court for disposition." *Certification by Wisconsin Court of Appeals* 4 (Oct. 13, 2005). We have accepted the second of those two suggestions by the court of appeals.

[2] The 2001–02 version of Wis. Stat. § 75.14(1) does not differ materially from the 2003–04 version. All additional references to the Wisconsin statutes are to the 2003–04 version unless otherwise indicated.

presentation of the tax certificate and proof of service of notice, execute in the name of the state and of the county, as such officer thereof, under the clerk's hand and the seal of the county, to the county and its assigns, a deed of the land so remaining unredeemed, and shall acknowledge the same which shall vest in the county an absolute estate in fee simple in such land subject, however, to recorded restrictions and redemption as provided in this chapter; and such deed duly witnessed and acknowledged shall be presumptive evidence of the regularity of all the proceedings, from the valuation of the land by the assessor up to and including the execution of the deed, and may be recorded with the like effect as other conveyances of land. No deed may be issued under this section until the county board, by resolution, orders issuance of the deed.

¶ 5. In September and October of 2003, the County's board of supervisors resolved to rescind the tax deed, having realized that the responsibilities associated with the landfill could place a financial burden on the County. Resolution 50–9–03 provides:

RE: Rescind Tax Delinquency Action

Whereas, a tax deed of certain property ("Property") which has tax parcel number 010–0717.0000, and which is described in the attached description, was recorded in the office of the Jackson County Register of Deeds in Volume 415 at page 839 as document number 311612, and a correction deed was recorded in Volume 416 at page 216 as document number 311730, and a correction affidavit was recorded in Volume 423 at page 825 as document number 314134; and

Whereas, the actions taken to authorize and record the tax deed were inadvertent, improvident and contrary to the public interest;

Therefore, be it RESOLVED by the Jackson

504

County Board of Supervisors and by the County Tax Deed and Land Committee as follows:

1. All actions taken to authorize the tax deed of the Property are rescinded.

2. The tax deed, correction deed and affidavit of correction recorded in volume 415 at page 839 as document number 311612, in volume 416 at page 216 as document number 311730, and in volume 423 at page 825 as document number 314134 are declared null, void and of no effect. Jackson County has no right, title or interest in or to the Property as a result of the tax deed, correction deed and affidavit of correction.

3. The County Clerk is authorized and directed to record a certified copy of this Resolution in the office of the Jackson County Register of Deeds.

Notwithstanding the County's resolution, JCSL continued to claim the County owned the landfill and was responsible for its care, maintenance and any subsequent liability. As a result, the County filed a declaratory judgment action in the Dane County Circuit Court.

¶ 6. In its complaint, the County alleged that it is inequitable to permit JCSL to escape its obligations for the landfill by refusing to pay taxes.[3] The County asked the court to declare that the County is not and never has been the owner of the landfill and that the County has no responsibility for the landfill under Wis. Stat. chs. 289 and 292, which address solid waste facilities and remedial action for such facilities. The County asserted that it was never involved in the operation of

---

[3] The County's complaint actually alleges this and other claims against JCSL and its president and sole shareholder, Thomas McNulty; however, we refer to JCSL and McNulty collectively as JCSL.

the landfill and received no financial benefit from its operation. It claimed that the clerk had mistakenly issued the tax deed without considering the nature of the property and had done so without authorization from the county board contrary to Wis. Stat. § 75.14. It contended that the county board of supervisors' resolution rescinding the tax deed had properly nullified County ownership of the property.[4] As an alternative, the County asked the circuit court to rule that even if it owns the property, it is not responsible for the long-term maintenance of the landfill because Wis. Stat. § 292.11(9)(e)1m.a. exempts the County from such liability. The County moved for summary judgment.

¶ 7. The circuit court granted summary judgment to the defendants, JCSL and the DNR. It concluded: (1) Pursuant to *Hayes v. Adams County*, 15 Wis. 2d 574, 581, 113 N.W.2d 407 (1962),[5] the county clerk had continuing authority as established by the county board to issue tax deeds; (2) there was no

---

[4] The County originally disputed the authority of the county clerk to issue the tax deed without express approval of the county board in regard to this specific property. It alleged that the clerk was without the statutory authority required by Wis. Stat. § 75.14(1): "No deed may be issued under this section until the county board, by resolution, orders issuance of the deed." However, the County now acknowledges that a 1905 County Resolution granted the clerk continuing authority to issue tax deeds to the County.

[5] *Hayes v. Adams County*, 15 Wis. 2d 574, 113 N.W.2d 407 (1962) held:

> The law is settled in Wisconsin that a separate resolution is not necessary every time the county clerk issues a tax deed to the county if a resolution granting continuing authority to issue tax deeds has been passed by the county board.

*Id.* at 581 (citations omitted).

express or implied repeal of that authority; (3) the tax deed issued for the property is valid; (4) the county board has no authority to rescind the tax deed; (5) the County owns the property; and (6) to grant the County the relief it requests would be inequitable. It also dismissed the remainder of the County's claims.[6] The County filed a motion for reconsideration, which the circuit court denied.

¶ 8. The County appealed, arguing that it had the authority to rescind the tax deed, under the broad statutory authority granted by Wis. Stat. § 59.03(1), which the County claims allows it to "exercise any organizational or administrative power, subject only to the constitution and to any enactment of the legislature." The County's position is that absent a statute barring its rescission of the tax deed, its actions resulted in effective rescission.

¶ 9. The court of appeals certified the issue of whether "a county, after taking a tax deed to assume ownership of property on which taxes had not been paid, may rescind the tax deed and return the property to the original owner, without that owner's consent." We address only the certified question.

## II. DISCUSSION

### A. Standard of Review

¶ 10. This case requires us to interpret and to apply statutes to undisputed facts. The interpretation

---

[6] The circuit court also granted the DNR's request for a declaration that the DNR could transfer the landfill license to the County pursuant to Wis. Stat. § 289.46(1). We do not address this issue because we decide only the question for which we accepted certification.

of statutes and their application to facts are questions of law, subject to our independent review. *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 166, 361 N.W.2d 673 (1985). However, we benefit from the analysis of the previous court's decision. *State v. Cole,* 2003 WI 59, ¶ 12, 262 Wis. 2d 167, 663 N.W.2d 700.

## B. Summary Judgment Principles

¶ 11. The certified question formed the basis for the circuit court's order granting summary judgment that dismissed the County's request for declaratory judgment in its favor. Every decision on a motion for summary judgment begins with a review of the complaint to determine whether, on its face, it states a claim for relief. *Westphal v. Farmers Ins. Exch.,* 2003 WI App 170, ¶ 9, 266 Wis. 2d 569, 669 N.W.2d 166. If it does, we examine the answer to see if issues of fact or law have been joined. *Id.* After we have concluded that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a prima facie case for summary judgment. *Id.* When they do so, we review the opposing party's affidavits to determine whether there are material facts in dispute, or inferences from undisputed material facts, that would entitle the opposing party to a trial. *Id.* "We will affirm a grant of summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Baumeister v. Automated Prods., Inc.,* 2004 WI 148, ¶ 11, 277 Wis. 2d 21, 690 N.W.2d 1 (citation omitted).

¶ 12. There were no affidavits filed that bear on the certified question. The affidavits filed by the

County relate to whether the county clerk had author-ity to issue the tax deed. The County now agrees the clerk had lawful authority to do so.[7] The facts material to the question of whether the County had the power to rescind the tax deed are not in dispute.

C. Parties' Arguments

¶ 13. The County contends that the county clerk made a mistake in issuing the tax deed. It argues that under its home rule powers, Wis. Stat. § 59.03, it is able to correct that mistake by rescission of the tax deed. The County argues that it would be unfair to the taxpayers of Jackson County to bear the burden of the landfill and the expenses associated with its ownership. The County emphasizes that rescission would return JCSL to exactly the same position it would have been in had the tax deed never been issued. The County's position depends entirely on its theory that it had the power to rescind the tax deed.

¶ 14. JCSL, on the other hand, contends that the County's position has no support in the law. JCSL contends that established legal principles governing the powers of counties and the rights, interests, and obli-gations associated with real property dictate that the County does, indeed, own the property. JCSL focuses on the lack of a statute that gives the County the power to rescind a tax deed, the statutory limitation on cancel-

---

[7] Before the circuit court in support of its motion for summary judgment, the County filed three affidavits from the county clerk, Kyle Deno. All related to whether the county board of supervisors had passed an ordinance authorizing the county clerk to issue a tax deed on the landfill property. Since the county clerk's authority to issue the tax deed is no longer in dispute, those affidavits are not material to our consideration of the circuit court's decision on the certified question.

lations of tax deeds set out in Wis. Stat. § 75.22, and the effect on property ownership that Wis. Stat. § 75.14 provides. It asserts that all rights and interests in the property passed to the County as a result of the tax deed and that when the incidents of ownership passed to the County, JCSL was divested of them.

### D. Home Rule

#### 1. County power

¶ 15. The County relies heavily on its home rule power set out in Wis. Stat. § 59.03(1) as support for its use of other statutes in ways not explicitly set out in those statutes, e.g., its attempt to use Wis. Stat. § 75.22. Before we address the County's home rule power, a review of the source of county power is helpful.

■

¶ 16. A county is a creature of the legislature and as such, it has only those powers that the legislature by statute provided. Wis. Const. art. IV, § 22. For more than a century, Wisconsin courts consistently have interpreted counties' powers as arising solely from the statutes:

> Counties are, at most, but local organizations, which, for the purposes of civil administration, are invested with a few functions characteristic of a corporate existence. ... [T]he statutes confer upon them all the powers they possess.

*Frederick v. Douglas County,* 96 Wis. 411, 416–17, 71 N.W. 798 (1897) (citations omitted). We have held that counties exist for, and derive their powers from, the state, through legislation. *State ex rel. Conway v. Elvod,* 70 Wis. 2d 448, 450, 234 N.W.2d 354 (1975) (explaining that a "county is totally a creature of the legislature,

and its powers must be exercised within the scope of authority ceded to it by the state"); *Kyncl v. Kenosha County,* 37 Wis. 2d 547, 555, 155 N.W.2d 583 (1968) (citation omitted) (explaining that a county "exists not by virtue of its own will or consent, but as a result of the superimposed will of the state"); *Douglas County v. Indus. Comm'n,* 275 Wis. 309, 313–14, 81 N.W.2d 807 (1957) (citations omitted) (pointing out that "[c]ounties, like other municipal corporations, are mere instrumentalities of the state, and statutes confer upon them their powers, prescribe their duties, and impose their liabilities"); *Spaulding v. Wood County,* 218 Wis. 224, 226, 260 N.W. 473 (1935) (citations omitted) (explaining that a county has "only such powers as are conferred upon [it] by statute, or such as are necessarily implied therefrom").

¶ 17. A county's home rule power is more limited than the home rule power that is afforded to cities; as we explained, "contrary to the direct and expansive delegation of power to municipalities under Wis. Const. art. XI, sec. 3, the authority of county boards is limited." *State ex rel. Teunas v. County of Kenosha,* 142 Wis. 2d 498, 504, 418 N.W.2d 833 (1988) (footnote omitted). Accordingly, the County's power to rescind a tax deed under the circumstances presented by this case must be found in a statute or necessarily be implied from a statute, in order for that power to exist.

2. Wisconsin Stat. § 59.03

¶ 18. The County asserts its authority is grounded in Wis. Stat. § 59.03(1), which provides:

> Administrative home rule. Every county may exercise any organizational or administrative power, subject only to the constitution and to any enactment of the

511

legislature which is of statewide concern and which uniformly affects every county.

¶ 19. The County correctly asserts that Wis. Stat. § 59.03 is a broad grant of power to counties. The County also asserts that its home rule power is complimented by Wis. Stat. § 75.22, wherein it asserts it has the implied, if not the expressed, power to rescind this tax deed. When exercising home rule power, a county must be cognizant of the limitation imposed if the matter has been addressed in a statute that uniformly affects every county as such legislation shows the matter is of statewide concern. *Mommsen v. Schueller,* 228 Wis. 2d 627, 635, 599 N.W.2d 21 (Ct. App. 1999). Wisconsin courts have previously recognized that while some subjects are exclusively a statewide concern, others may be entirely a local concern and some subjects are not exclusively within the purview of either the state or of a county. *Id.* at 636. For those subjects where both the state and a county may act, the county's actions must "complement rather than conflict with the state legislation." *State ex rel. Ziervogel v. Washington County Bd. of Adjustment,* 2004 WI 23, ¶ 37, 269 Wis. 2d 549, 676 N.W.2d 401.

¶ 20. Four factors assist us in determining how a county's action is to be analyzed:

(1) whether the legislature has expressly withdrawn the power of municipalities to act;

(2) whether the ordinance logically conflicts with the state legislation;

(3) whether the ordinance defeats the purpose of the state legislation; or

512

(4) whether the ordinance goes against the spirit of the state legislation.

*Mommsen,* 228 Wis. 2d at 636–37 (citing *Anchor Sav. & Loan Ass'n v. EOC,* 120 Wis. 2d 391, 397, 355 N.W.2d 234 (1984); *U.S. Oil, Inc. v. City of Fond Du Lac,* 199 Wis. 2d 333, 345, 544 N.W.2d 589 (Ct. App. 1996)). If any one of the four factors set out in *Mommsen* is met by a county's action, that action is without legal effect. *Ziervogel,* 269 Wis. 2d 549, ¶ 38 (citation omitted). We conclude that the second *Mommsen* factor, whether the County resolution logically conflicts with a state statute, must be evaluated because Wis. Stat. § 75.22 specifically addresses cancellation of tax deeds.

3. Wisconsin Stat. § 75.22[8]

¶ 21. The County implies that it has the power to cancel a tax deed that it has issued due to Wis. Stat. § 75.22, which provides:

> If after the issuance of a tax certificate or conveyance to the county of any lands subject to a tax certificate and within the time hereinafter prescribed it shall be discovered that the certificate was invalid, the county board shall make an order, briefly stating the reason therefor, directing that the certificate, as it applies to the affected lands, or deed be canceled. But no certificate or conveyance shall be deemed invalid within the meaning of this section by reason of any mistake or irregularity in any of the tax proceedings not affecting the groundwork of the tax; nor shall any county be liable to pay or refund any moneys by reason of any such mistake or irregularity.

The County asserts that § 75.22 was enacted to protect

---

[8] Wisconsin Stat. § 75.22 has not changed materially since the tax deed was issued by the Jackson County clerk in 2002.

the counties; and therefore, it cannot be used as a sword by JCSL. Rather, it evidences power delegated to the County. The County asserts that because the landfill property is worthless to the County, a fact of which it was unaware before it took the tax deed, the mistake of the clerk affects the "groundwork of the tax," as that phrase is used in § 75.22. The JCSL agrees that a tax deed may be cancelled under § 75.22 when there is a defect in the deed that affects "the groundwork of the tax." However, it contends that no such defect is present here. Therefore, § 75.22 does not permit rescission under the facts of this case.

¶ 22. In order to address the parties' arguments, we must interpret and apply the phrase "groundwork of the tax" found in Wis. Stat. § 75.22. When we interpret a statute, we rely on the criteria set out in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110. In *Kalal*, we explained that:

> [T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect.

*Id.*, ¶ 44. Context is also important when determining the plain meaning of a statute, as is the purpose of the statute and its scope, if those qualities can be ascertained from the language of the statute itself. *Id.*, ¶¶ 46–48. These are all intrinsic sources for statutory interpretation. *Id.*

¶ 23. The phrase "groundwork of the tax" was added to "[s]ection 1184 of the Revised Statutes of 1878" during the 1897 legislative session. *Foster v. Sawyer County*, 197 Wis. 218, 220–21, 221 N.W. 768 (1928).

Section 1184 was renumbered subsequently to become Wis. Stat. § 75.22. In *Sawyer,* we interpreted the phrase "groundwork of the tax" as an effort by the legislature to maintain the validity of tax deeds when there had been a technical irregularity in the proceeding by which the tax deed was issued. *Id.* at 222–23. We did so by explaining what had been raised as defects in tax deeds in the past and pointing out that the "groundwork of the tax" did not include such defects as failing to post a notice or failing to file an affidavit in regard to the sale, nor did it include other technicalities of the sales. *Id.* at 222. When we have interpreted terms identical to those currently under consideration, we rely on those past interpretations. *See Reiter v. Dyken,* 95 Wis. 2d 461, 471, 290 N.W.2d 510 (1980).

¶ 24.　We have employed the phrase "groundwork of the tax" in more recent decisions than *Foster.* For example, in *Bauermeister v. Town of Alden,* 16 Wis. 2d 111, 113 N.W.2d 823 (1962), we interpreted statutory language, "unless it shall appear that the plaintiff has paid more than his equitable share of such taxes," found in Wis. Stat. § 74.73(2) (1961–62), as requiring a showing of a defect in the assessment that affected "the groundwork of the tax." *Id.* at 114. We explained that such a defect in the groundwork of the tax means "a defect or irregularity that necessarily affects the principle of the tax and shows that it must be unjust and unequal . . . [or an] illegality or irregularity that results in an inequitable burden." *Id.* (citing *Barker Lumber Co. v. Genoa City,* 273 Wis. 466, 469, 78 N.W.2d 893 (1956)).

■■■■

¶ 25.　Among other concerns, Wis. Stat. § 75.22 addresses the validity of tax deeds made in reliance on a tax certificate, and it establishes that tax deeds will

not be set aside for a "mistake or irregularity." A defect in "the groundwork of the tax," the same phrase as used in *Bauermeister* and in *Foster,* requires that the tax deed be set aside. The defect to which the phrase "groundwork of the tax" was tied in *Bauermeister* and in *Foster* is a defect that caused the property owner to bear an unequal tax burden. *Bauermeister,* 16 Wis. 2d at 114. Therefore, in order for the County to argue that it has the authority to set aside the tax deed under § 75.22, it would be required to show the property was inequitably taxed resulting in the property owner paying more than its equitable share of the tax.

¶ 26. This seems an odd position for a county to take, which the County recognizes as it has never alleged a defect in the tax proceedings that caused the tax assessment on the property to be unjust or unequal. Instead, the mistake the County alleges is the clerk's lack of prudence in issuing a tax deed on property that contains a landfill. Nevertheless, the County argues that its mistake is related to the groundwork of the tax because the clerk did not anticipate that the property would have no value to the County at the time when the tax deed was issued.

¶ 27. The County's argument misses the mark set by the legislature in Wis. Stat. § 75.22. First, there is nothing in the record on which we could base the conclusion that the property is worthless. However, even if that were true, it is not a defect that causes the taxation of the property to be unfair to the County. Furthermore, if a mistake about the value of the property to a county were sufficient to set aside a tax deed, whenever a county took title to a property that ended up being worth less than the county anticipated, the county would be able to cancel the tax deed. Such a

broad reading of § 75.22 is contrary to the restrictive wording chosen by the legislature, as it attempted to provide certainty to title held under a tax deed. *Foster,* 197 Wis. at 222.

¶ 28. Second, there is nothing in the record in regard to any taxes that will be assessed against the property. A clerk's mistake in failing to accurately ascertain the value of the property to a county is not the equivalent of an irregularity in the tax proceedings that causes the property to be inequitably taxed. Therefore, there is nothing to show that the clerk's mistake affects the groundwork of the tax, either as it affected the taxation of the property when JCSL owned it or when the County held title.

¶ 29. In addition, the County's attempt at returning the property to JCSL is also complicated by Wisconsin common law. For example, we have held that when a county takes a tax deed, Wis. Stat. § 75.14 vests fee ownership in the county. *Oosterwyk v. Milwaukee County,* 31 Wis. 2d 513, 518, 143 N.W.2d 497 (1966). Furthermore, it has been the law in Wisconsin for more than 140 years that in order to transfer title by deed, the deed must be accepted by the grantee. *Welch v. Sackett,* 12 Wis. 270, 292–95 (1860)[9]. As we have explained:

> [A] delivery by the donor to a third person, for the use of the donee, and an acceptance by the latter, are two

---

[9] *See also Miles v. Mackle Bros., Division Deltona Corp.,* 73 Wis. 2d 84, 89, 242 N.W.2d 247 (1976) (concluding that the plaintiffs could have refused to accept the deed); *Clifford v. City of Hartford,* 204 Wis. 217, 220, 235 N.W. 407 (1931) (concluding that purchase "would not and could not be consummated until and unless the intention [to transfer title] was followed up by acceptance of a deed").

very different things. By the former, the donor signifies his willingness to part with the property, whilst by the latter the donee makes known his assent to receiving it, and *both must concur before the title is changed or affected.*

*Id.* at 293 (emphasis added). Here, JCSL has expressly refused to accept reconveyance of fee ownership of the property. Although the County has not attempted to quit claim the property to JCSL, its attempted rescission of the tax deed would produce the same result, if it were valid. That is, JCSL would be forced to accept ownership of property. Forcing one to accept ownership of property against that party's wishes is contrary to the common law. *See Miles v. Mackle Bros., Division Deltona Corp.,* 73 Wis. 2d 84, 89, 242 N.W.2d 247 (1976). Therefore, without statutory authority that permits a county to force ownership of property on another, the common law cuts against the County's position.

¶ 30. However, the County also contends that even if it was not given the power to rescind the tax deed by Wis. Stat. § 75.22, it nevertheless has the authority to do so under its generalized home rule power. We recently revisited home rule authority in *Ziervogel,* where we examined a Washington County zoning ordinance. In *Ziervogel,* we reviewed a county board of adjustment's denial of homeowners' requests for an area zoning variance. The denial was based on a county ordinance. We concluded that the county's ordinance adopting a " 'no reasonable use of the property' definition for unnecessary hardship in area variance cases [] conflict[ed] with the statutory grant of discretion to local boards of adjustment pursuant to Wis. Stat. § 59.694(7)(c)." *Ziervogel,* 269 Wis. 2d 549, ¶ 39. On that basis, we concluded that the ordinance was unenforceable. *Id.,* ¶ 40.

518

¶ 31. Therefore, as *Ziervogel* points out in the context of the home rule power of a county, Wis. Stat. § 59.03 grants counties the right to act and decision-make on local affairs. However, counties must do so in a manner that does not conflict with the state's interest in uniformly treating those questions that arise in many counties across the state. The test employed in *Ziervogel* in analyzing an ordinance is the same four-factor test we employed in *Anchor Savings & Loan Ass'n* and *Mommsen,* set out above.

¶ 32. As we have explained, the second factor, whether the exercise of power by the County conflicts with legislation that has a statewide impact, is at issue.[10] *Ziervogel,* 269 Wis. 2d 549, ¶ 38; *Anchor Sav. & Loan Ass'n,* 120 Wis. 2d at 397. Wisconsin Stat. § 75.22 is uniformly applicable to every county in the state. In it, the legislature expressly limited the circumstances under which a tax deed can be cancelled. The legislature has decided that *no* certificate or tax deed "shall be deemed invalid . . . by reason of *any* mistake or irregularity in *any* of the tax proceedings not *affecting the groundwork of the tax.*" Section 75.22 (emphasis added). The home rule power granted to the county by Article IV, Section 22 of the Wisconsin Constitution and Wis.

[10] One could argue that the State has withdrawn a county's power to rescind a tax deed because Wis. Stat. § 75.22 provides that "no certificate or conveyance shall be deemed invalid" if the groundwork of the tax is not affected. This argument implicates the first factor under *Mommsen v. Schueller,* 228 Wis. 2d 627, 636, 599 N.W.2d 21 (Ct. App. 1999). However, because Wisconsin common law requires acceptance of ownership of property before ownership can vest, the county never had such authority for the legislature to withdraw by enacting § 75.22.

Stat. § 59.03 do not override that legislative directive. Despite the general authority of a county to act and decision-make over local matters, counties must act in conformity with the letter and spirit of statewide law. *Teunas,* 142 Wis. 2d at 503 (concluding that a county does not have authority to enact an obscenity ordinance). Section 75.22 is a statute that has statewide impact on the stability of title taken under a tax deed, and it would be logically inconsistent with the statute's attempt to provide stability to such title were we to adopt the County's position.

¶ 33. Furthermore, any ability a county has to rescind an action earlier taken is limited by whether vested rights are affected by the county action. For example, in *Edwards Realty & Finance Co. v. City of Superior,* 250 Wis. 472, 27 N.W.2d 370 (1947), Edwards Realty commenced an action to cause the city to provide it with certain tax certificates. Pursuant to a contract and resolution of the city council, the city sold Edwards Realty tax certificates issued under certain conditions. *Id.* at 473. Edwards Realty agreed to pay for the certificates in monthly installments. *Id.* Subsequent to the initial agreement, the city council adopted a resolution to amend the contract, at the request of Edwards Realty. *Id.* at 474. Several months later, the city council adopted a resolution rescinding and annulling the resolution that had amended the contract between the parties. *Id.*

¶ 34. In our review of Edwards Realty's claim, we held that Edwards Realty's rights were established in the original contract; that the subsequent resolution had not granted it any additional rights; and therefore, the city council's rescission of the resolution did not change either party's position or upset any reliance upon the resolution. *Id.* at 477. We concluded that "a

520

municipal corporation, like other legislative bodies, has a right to reconsider under parliamentary law its vote and action upon questions properly pending before it, and [to] rescind its previous action provided vested rights are not violated and such rescission is in conformity with the law applicable to the government of the body." *Id.* Because no vested rights were established by the ordinance that was rescinded, the rescission was proper. *Id.*

¶ 35. Both parties contend that *Edwards Realty* supports their position. However, we conclude that two of the three conditions established by *Edwards Realty* as necessary to a valid rescission, (1) that no vested rights are abrogated and (2) that the rescission is in conformity with the law, are not met by the County's attempted rescission.[11] First, the County's alleged rescission, if valid, would most certainly abrogate vested rights, even if the "rights" are those that the County now tries to escape. Pursuant to Wis. Stat. § 75.14, the taking of a tax deed "vest[s] in the county an absolute estate in fee simple." *Oosterwyk,* 31 Wis. 2d at 518 (concluding that when it took the tax deed under the statutory process of ch. 75, the county became the fee simple owner of the property pursuant to § 75.14). Whether the County values these rights, the County's acceptance of the tax deed most certainly vested all

---

[11] The *Edwards Realty* requirement that the reconsideration be done "under parliamentary law" is to ensure that the municipal body consider an issue under some kind of formal procedure, and that the will of a single person or group of people, without the approval of the governing body at large, not form the foundation of a decision to rescind. In the case at bar, there is no indication that the county board's decision to rescind did not occur under the usual procedure employed by that body.

rights of ownership in the County, which according to *Edwards Realty,* the County cannot now divest by rescission. Second, we have concluded that the alleged "rescission" is not in conformity with the law because it is contrary to the limiting provisions of Wis. Stat. § 75.22, which permit the cancellation of tax deeds *only if* specifically described circumstances are present. Third, we have also concluded that permitting the County to rescind the tax deed is equivalent to requiring JCSL to accept ownership of real estate, which under Wisconsin common law JCSL has a right to refuse. Therefore, without statutory authority that changes the common law, we see no authority for the County's attempted rescission of the tax deed.

¶ 36. In addition, *Kenosha County v. Town of Paris,* 148 Wis. 2d 175, 434 N.W.2d 801 (Ct. App. 1988), applied the *Edwards Realty* holding. It supports our conclusion that the County did not validly rescind the tax deed. *Kenosha* involved a county-wide zoning plan that was not adopted or approved by one of the towns in the county. *Id.* at 177. The town developed its own ordinance and petitioned the county for approval. *Id.* The county originally granted approval, but later reconsidered and withdrew its approval pending a revised county ordinance. *Id.* at 177–78. The court of appeals upheld the county's withdrawal of approval for the zoning plan, reviewing and relying on *Edwards Realty,* in regard to the ability of a municipal corporation to rescind a decision. *Id.* at 181–82. The court of appeals concluded that "no vested rights were violated by the reconsideration of the town's ordinance"; therefore, it was permissible. *Id.* at 183. For guidance on that issue, the court in *Kenosha* turned to a Maryland case, *Dal Maso v. Board of County Commissioners of Prince George's,* 34 A.2d 464 (Md. 1943). The *Dal Maso* court

held that because there was no change in the status of the appellants or their property in the week between the original decision and its reconsideration, no vested rights had been disturbed. *Id.* at 467. The *Kenosha* court applied the same reasoning, holding:

> We likewise can find nothing in the record which indicates a change in the status of property located in the town from the time of the ordinance's approval to its reconsideration a month later. The town board acted swiftly after the initial approval to post the ordinance, install a town board of zoning appeals, and make substantial amendments to the zoning map. However, none of these actions created any vested rights or changed the status of the property and its owners. We therefore conclude that the county's reconsideration was lawful.

*Kenosha,* 148 Wis. 2d at 183.

¶ 37. When we apply this rationale to the case before us, we conclude that the County's attempt to rescind the tax deed cannot be effective. First, the County held ownership of the property for more than a year and recorded the tax deed and clarifying affidavits in the public records, thereby affirming its ownership. Second, the status of fee simple ownership changed from JCSL to the County. Third, JCSL has objected to having ownership placed back upon its shoulders, and the County has shown no statutory authority for its assertion that it has the power to unilaterally impose ownership of real property on a third party, contrary to Wisconsin common law. Accordingly, we conclude that the position of JCSL, not that of the County, must prevail.

### III. CONCLUSION

¶ 38. We conclude that the County lawfully issued the tax deed. We also conclude that when the County

523

accepted the tax deed, all property rights vested in fee simple in the County. Because the County has no statutory authority to rescind a tax deed that was lawfully issued and thereby unilaterally impose property ownership on a third party, its attempted rescission has no effect on ownership of the property containing the landfill. Therefore, we affirm the circuit court's conclusion in that regard, and, as suggested by the certification, we remand to the court of appeals to decide the remaining issues this case presents.[12]

*By the Court.*—The judgment of the circuit court is affirmed and remanded.

¶ 39. SHIRLEY S. ABRAHAMSON, C.J. *(concurring in part and dissenting in part).* I agree with the conclusion in the majority opinion that Jackson County cannot rescind the tax deed.

¶ 40. I would not, however, remand the remaining issues to the court of appeals even though this court has the power to do so. In addition to the issue that is addressed by the majority opinion, the parties briefed two issues that the majority opinion declines to address. These issues involve the extent of the county's responsibilities as the present owner of a former landfill.[1]

---

[12] We advise the court of appeals that on remand, all of the issues raised by the DNR are properly before the court because the DNR prevailed before the circuit court and had no obligation to file a cross-appeal. *See Garcia v. Regent Ins. Co.,* 167 Wis. 2d 287, 291 n.2, 481 N.W.2d 660 (Ct. App. 1992).

[1] Jackson County Sanitary Landfill, Inc. raised and briefed the following significant state-wide issue:

> As the owner of real property that was used as a solid waste facility, does a county have responsibility for the long-term care and maintenance of the property?

¶ 41. Perhaps the court (including me) erred in not limiting the issues on accepting certification in the instant case. Perhaps! Nevertheless, I would not remand the issues. I would have this court decide these fully briefed issues in the interest of judicial economy, speedy resolution of appeals, reduced costs to the litigants, and finality of decisions. Remand is a wasteful duplication of efforts.

¶ 42. When this court grants certification it acquires jurisdiction of the case including all issues, not merely the issues certified by the court of appeals or the issue upon which the court accepts certification. Wis. Stat. §§ 808.05(2); (Rule) 809.61; *see* Wis. Const. art. VII, § 3(3). The order granting certification in the instant case is the standard certification order used by this court, asserting jurisdiction over all issues in the matter before the court.[2] The court's standard practice in certification cases is to decide all issues raised by the briefs. *See, e.g., Schwister v. Schoenecker*, 2002 WI 132,

Jackson County raised and briefed the following related issue:

. Did the Circuit Court err when it dismissed the declaratory judgment action in its entirety, depriving Jackson County of the opportunity to conduct discovery and present its case on the remaining issues?

[2] The certification order states in pertinent part:

IT IS ORDERED that certification is granted and the appeal is accepted for consideration of all issues raised before the court of appeals. When this court grants direct review upon certification, it acquires jurisdiction of the case, Wis. Const. art. VII, § 3(3), that is, the entire appeal, which includes all issues, not merely the issues certified or the issue for which the court accepts certification. *State v. Stoehr*, 134 Wis. 2d 66, 70, 396 N.W.2d 177 (1986); Wis. Stat. § 808.05(2) and (Rule) 809.61. Further, the court has jurisdiction over issues not certified because the court may review an issue directly on its own motion. Wis. Stat. § 808.05(3) . . . .

¶ 1 n.1, 258 Wis. 2d 1, 654 N.W.2d 852; *State v. Stoehr,* 134 Wis. 2d 66, 70, 396 N.W.2d 177 (1986).

¶ 43. A certification by the court of appeals bringing up the entire appeal to this court is very different from this court's answering a certified question of law submitted to this court by the United States Supreme Court, a federal court of appeals, or the supreme court of another state.[3] The court of appeals does not certify, and this court does not take jurisdiction over, discrete legal questions within the appeal.[4] Certification is not and should not become the practice of the court of appeals certifying questions of law.

¶ 44. Having limited experience with certified questions, I can say that I have a high level of discomfort deciding a question of law in the abstract, stripped of facts. Facts influence the statement of and application of a question of law.

¶ 45. Having substantial experience with certification and petitions for review, I am often hesitant to limit the issues before this court because often, not always, several legal issues are so intertwined that they cannot be decided separately.

---

[3] *See* Wis. Stat. § 821.01 (2003–04), which states:

821.01 Power to answer.

The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States or the highest appellate court of any other state when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

[4] *See* Wis. Stat. § (Rule) 809.61.

¶ 46. In any event, in the instant case the time for this court to have determined whether it was going to decide all issues or was going to limit the issues and remand some to the court of appeals was in the order accepting the certification. That procedure would have allowed the parties to know which issues to spend their time and resources briefing and arguing.

¶ 47. The standard certification order in the instant case advised the parties that all issues would be addressed. Accordingly, the parties briefed all the issues and presented them at oral argument. The parties thus used their resources and those of this court. By remanding issues of law to the court of appeals that are properly before this court, that were fully briefed and argued by the parties, and that could be decided by the court, the majority opinion imposes unnecessary expenses on the parties, imposes additional work on the court of appeals, fosters the possibility of another review in this court, and delays the administration of justice.

¶ 48. Although I might have joined my colleagues in limiting the issues on acceptance of the certification, I am persuaded that remand now is inefficient appellate practice and procedure.[5] I write because I do not want the bench and bar to think this case sets a precedent for future appellate practice or procedure. It does not. For these reasons, I write separately.

¶ 49. DAVID T. PROSSER, J. (*dissenting*). This case exposes a vexing problem in the financing of local governments.

---

[5] For my prior objections to remand to the court of appeals in certification cases, see *State v. Stuart,* 2003 WI 73, ¶¶ 44–55, 262 Wis. 2d 620, 664 N.W.2d 82 (Abrahamson, C.J., concurring in part and dissenting in part); *Crown Life Ins. Co. v. LaBonte,* 111 Wis. 2d 26, 45–46, 330 N.W.2d 201 (1983) (Abrahamson, J., concurring in part and dissenting in part).

¶ 50. Counties, like school districts and other municipal governments, obtain most of their operating revenue from the property tax. To assure the funding of public services, the cooperation of taxpayers is essential. When a taxpayer makes timely payments to a taxation district, the treasurer of that district distributes a proportionate share of the proceeds to each eligible taxing jurisdiction on a regular schedule. This is called settlement. *See* Wis. Stat. §§ 74.23, 74.24, 74.27, 74.30.

¶ 51. When a taxpayer fails to make timely payments, the problem eventually falls to the county. By August 20 of each year, the county treasurer is required to settle in full with other taxing jurisdictions for all real property taxes and special taxes. In essence, the county "buys out" the delinquent taxes by advancing to all other taxing jurisdictions their share of unpaid property taxes. *See* Rick Olin, Wisconsin Legislative Fiscal Bureau, *Informational Paper No. 14, Property Tax Administration,* 11 (Jan. 2001); Wis. Stat. § 74.29. If the county treasurer does not settle with the other taxing jurisdictions by August 20, the county is subject to interest charges and penalties. Wis. Stat. § 74.31. Thus, in a very real sense, when a taxpayer fails to pay property taxes, the county is left holding the bag.

¶ 52. Of course, the counties have remedies. In time, a county may take ownership of the taxpayer's property by issuing a tax deed pursuant to Wis. Stat. § 75.14(1). The county may also file a civil action under Wis. Stat. § 74.53 against persons who own the property to recover delinquent taxes.

¶ 53. The question arises whether these remedies are adequate to protect the public interest, particularly in situations where the taxpayer's property is so unde-

sirable that the taxpayer wants to unload it to the county, where it may become a major liability.

¶ 54. In this case, the Jackson County Sanitary Landfill ceased paying property taxes in 1998. In 2000 it stopped accepting waste and closed down. In 2002 the county took the property in an effort to recoup the money it had already paid out in settlement as well as its own share of delinquent taxes.

¶ 55. One might argue that the county should have known better than to take ownership of this albatross. But one can also argue that the county was euchred into doing so by a clever but conniving landfill owner.

¶ 56. The majority is not much troubled by the county's dilemma, or by the blueprint it is creating for future tax cheats. I am very troubled and would exercise this court's equitable power to cancel the tax deed to undo this scam. In any event, I urge the legislature to address the problem.